### No. C-1292

**The Sherman Agency, a Colorado corporation v. J. J. Carey, a/k/a Lou Carey, Ben Gay, Carey Realty Company, a Colorado corporation, and Ben Gay, Inc., a Colorado corporation**

(577 P.2d 759)

Decided April 24, 1978.

Misuraca & Beyers, James L. Beyers; Rothgerber, Appel & Powers, Robert S. Slosky, for petitioner.

Alan E. Karsh, P.C., for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The Sherman Agency appealed a judgment denying its claim against defendants J. J. Carey (Carey) and Carey Realty Company for a commission on the sale of a Canadian ranch. The court of appeals, 39 Colo. App. 246, 568 P.2d 75 affirmed. The Sherman Agency petitioned for a writ of certiorari, which we granted. We affirm.

Carey owned an option to purchase the ranch. This was represented by an option. $200,000 of the option price was payable on or before December 31, 1969. If it was not paid Carey would lose all rights to the ranch.

On June 20, 1969, Carey entered into a listing agreement for the ranch with The Sherman Agency. Naiman, the president of The Sherman Agency, drafted the agreement, which provided:

"This is your authorization and exclusive right to sell or exchange my property known as V Bar V Ranch . . . at a price of $1,500,000 with terms or trade acceptable to me. This authorization shall continue for a period of 180 days from this date. I agree to pay you a fee of 6% based on the sales price or fair market value of the property if an exchange is consummated. This fee will be in cash only in the event that over $300,000 is generated to me in the sale or exchange."

Acting under this agreement, Naiman brought together Carey and Ben Gay of Ben Gay, Inc. (Gay), and negotiations commenced. Consideration was given to a merger between Carey and Gay, with the $200,000 payment being made from funds furnished by Gay and from the proceeds of a $50,000 loan to be made by Naiman to Gay. On December 29, 1969 Ben Gay advised Naiman that he was no longer interested in the transaction as structured. Carey then went to Ben Gay and prevailed upon him to resume negotiations.

On December 31, 1969 Carey and Gay entered into an agreement entitled "Loan Agreement and Option" wherein Gay loaned Carey $200,000 payable December 31, 1970. $50,000 of the loan was borrowed from a bank by Gay. The $200,000 was paid to the optionor leaving a remainder of approximately $600,000 to be paid by Carey on the option price. The Carey-Gay agreement further provided that Gay had the option to purchase Carey's equity in the ranch by cancelling all of Carey's indebtedness to Gay.

On October 15, 1970, Gay exercised its option under the Carey-Gay agreement and succeeded to Carey's interest in the ranch. The trial court characterized the transaction as a sale, and found the consideration to be the cancellation of Carey's debt to Gay, plus the assumption of Carey's liability to the optionor of the land. The trial court also found that, as additional compensation, Carey received the right to 905 shares of Ben Gay, Inc. stock. The trial court found, however, that there was insufficient evidence to place a value on these minority shares in a closely held corporation.

■ We agree with the construction of the listing agreement adopted by the trial court and the court of appeals: The phrase, "at a price of $1,500,000 with terms or trade acceptable to me" authorized commission only in the event of variations in terms other than price. Thus, if The Sherman Agency was to receive a commission it was required to produce a buyer willing to pay $1,500,000. There was more than adequate evidence to support this construction of the contract. The price was fixed, and only the other terms were subject to subsequent acceptance by the seller.

■ The contract in question here was prepared by Naiman, acting for The Sherman Agency, and thus should be construed most strongly against it. *See Christmas v. Cooley,* 158 Colo. 297, 406 P.2d 333 (1965); *Moorman Manufacturing Co. v. Rivera,* 155 Colo. 413, 395 P.2d 4 (1964). In a case such as this, where the express language reveals that the broker is to receive its commission only if certain conditions are met, such conditions govern. *See Scott v. Huntzinger,* 148 Colo. 225, 365 P.2d 692 (1961); *Hodgin v. Palmer,* 72 Colo. 331, 211 P.373 (1922).

■ Given this construction of the contract the only remaining question was whether the defendant showed by clear and convincing evidence[1] that the transaction met the sales price requirement. The point of controversy in this respect was the value of the right to the 905 shares of Ben Gay, Inc. stock which Carey received as compensation. As mentioned, the trial court found the evidence insufficient to establish value. Thus, it found that The Sherman Agency had not met its burden of proving that the value of the stock was $700,000 as would be required to make an aggregate of $1,500,000 sales price.

We agree with the ruling of the court of appeals that there was no error in the trial court's conclusion that the petitioner had failed to meet its burden of proof.

■ The Sherman Agency claimed damages from Gay for tortious interference with contractual relations, and argued the matter here. This issue was not mentioned, however, in either the petition for rehearing in the court of appeals or the petition for certiorari here. We, therefore, do not consider it.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE CARRIGAN do not participate.

---

[1] *See Johns v. Ambrose-Williams & Co.,* 136 Colo. 390, 317 P.2d 897 (1957). The instant case arose before the effective date of section 13-25-127, C.R.S. 1973 which imposes a general requirement of proof by only a preponderance of the evidence.